**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JACKIE CRUSE,

                Plaintiff,

vs.                              Case No.  3:08-cv-629-J-JRK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

_____/

## OPINION AND ORDER[1]

### I.  Status

Jackie Cruse ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits.  Her alleged inability to work is based on spondolosis, thromboycytopenia, mitral valve prolapse, migraines, and shortness of breath.  See Transcript of Administrative Proceedings ("Tr.") at 131; Memorandum in Support of Complaint (Doc. No. 15; "Pl.'s Mem.") at 2-3.  On April 24, 2002, Plaintiff filed an application for disability insurance benefits, alleging an onset date of March 28, 2002.  Tr. at 122-25.  An Administrative Law Judge ("ALJ") held a hearing on September 14, 2004, Tr. at 1125-33, and issued a decision on February 14, 2005 finding Plaintiff not disabled through the date of the decision.  Tr. at 75-82.  On August 8, 2006, the Appeals Council granted Plaintiff's request for review, vacated the ALJ's decision, and remanded the case to the ALJ for further proceedings.  Tr. at 90-92.  The ALJ held a second hearing on February 20, 2007, Tr. at 1134-75, and issued a decision on April 5, 2007 finding

---

[1]       The parties consented to the exercise of jurisdiction by a United States Magistrate Judge, see Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 12), and the Order of Reference was entered on August 25, 2008 (Doc. No. 13).

Plaintiff not disabled through the date of the decision. Tr. at 30-39. On December 6, 2007, the Appeals Council granted Plaintiff's request for review. Tr. at 949-52. After receiving additional evidence from Plaintiff, on January 9, 2008, the Appeals Council issued a decision "adopt[ing] all of the [ALJ's] findings and conclusions regarding whether [Plaintiff] is disabled for the period prior to the attainment of age 55 as well as all of the conclusions regarding the claimant's residual functional capacity." Tr. at 18. However, the Appeals Council found that as of February 28, 2006, when Plaintiff reached the age of fifty-five, Rule 202.06 governed and supported a finding of disability. Tr. at 19. Accordingly, Plaintiff was awarded benefits beginning February 28, 2006. Tr. at 20.[2]

On June 23, 2008, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1) seeking review of the Commissioner's final decision.[3] Plaintiff has exhausted the available administrative remedies, and the case is properly before the Court.

Despite Plaintiff's many physical medical issues, she focuses solely on her psychological issues for this appeal. Recognizing the Appeals Council adopted the ALJ's findings and conclusions in determining Plaintiff's residual functional capacity ("RFC") prior to February 28, 2006, Plaintiff argues the ALJ erred "by not correctly and properly evaluating the Plaintiff's [RFC]." Pl.'s Mem. at 2, 6 (emphasis and capitalization omitted). Specifically, Plaintiff contends the ALJ did not consider Plaintiff's "mental limitations" when formulating the hypothetical to the vocational expert and when assigning Plaintiff's RFC. Id. at 10-11. After

---

[2]    Because Plaintiff was found disabled when she reached the age of fifty-five and awarded benefits from that time forward, the undersigned reviews the final decision with respect to the period between Plaintiff's alleged onset date through the date the Commissioner determined Plaintiff became eligible for benefits.

[3]    By letter dated June 5, 2008, Plaintiff was granted additional time to file a civil action seeking review of the Commissioner's decision. Tr. at 7.

a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds the ALJ's decision with respect to Plaintiff's alleged disability status prior to February 28, 2006 is supported by substantial evidence.[4]  Therefore, the Commissioner's final decision is due to be affirmed.

## II.  The ALJ's Decision

When determining whether an individual is disabled, an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the plaintiff: 1) is currently employed; 2) has a severe impairment; 3) has an impairment that meets or medically equals one listed in the regulations; 4) can perform past relevant work; and 5) retains the ability to perform any work in the national economy.  See 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The ALJ performed the required five-step sequential inquiry. At step one, the ALJ established Plaintiff has not engaged in substantial gainful activity since March 28, 2002 (the alleged onset date).  Tr. at 32.  At step two, the ALJ found Plaintiff suffers from the following severe impairments: "late effects of cerebellar vascular disease, some significant bulges in the cervical spine, thrombocytopenia and sickle cell trait."  Tr. at 32.  At step three, the ALJ stated Plaintiff does not have an impairment or combination of impairments that meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. at 35.

The ALJ determined Plaintiff has the RFC for a substantial range of light work: Plaintiff can lift or carry ten pounds frequently and twenty pounds occasionally; Plaintiff can stand or walk for six hours and sit for six hours in an eight-hour work day (but has to take "normal

---

[4]        All future references to the ALJ's decision are to the April 5, 2007 decision.

breaks"); Plaintiff can occasionally reach overhead but cannot repetitively reach overhead; Plaintiff should avoid extreme temperatures, humidity, dampness, and vibration; and Plaintiff "has mild to moderate limitation on her capacity to understand, remember and carry out detailed instructions and to maintain concentration and attention for extended periods, which functionally limits her to simple, nonproduction work." Tr. at 35. At step four, the ALJ found Plaintiff is not capable of performing her past relevant work.[5] Tr. at 38. At step five, the ALJ determined that Plaintiff is capable of performing jobs that exist in significant numbers in the national economy considering her age, education, work experience, and RFC. Tr. at 38. The ALJ identified such jobs as "ticket taker," "ticket seller," and "call out operator[.]" Tr. at 39. The ALJ concluded Plaintiff was not under a disability[6] from March 28, 2002 (the alleged onset date) through the date of the decision. Tr. at 39. The Appeals Council subsequently found Plaintiff was disabled beginning February 28, 2006.

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard

---

[5]        Plaintiff's past relevant work includes working as a coordinator, a driver, a fingerprint technician, and a learning center coordinator.  Tr. at 132.

[6]        "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).

is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

Plaintiff argues the ALJ erred in formulating the hypothetical to the vocational expert and in assessing her RFC because the hypothetical and RFC do not include her "mental health issues[.]" Pl.'s Mem. at 10. In the fifth step of the sequential evaluation process, an ALJ may pose a hypothetical question to a vocational expert as part of his determination of whether the claimant can obtain work in the national economy. See 20 C.F.R. § 416.920(a)-(f). "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v. Barnhart, 284 F.3d 1219, 1227(11th Cir. 2002) (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999)); see also Loveless v. Massanari, 136 F. Supp. 2d 1245, 1250 (M.D. Ala. 2001). Similarly, in assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Swindle v. Sullivan, 914 F.2d 222,

226 (11th Cir. 1990) (stating "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; <u>Reeves v. Hickler</u>, 734 F.2d 519, 525 (11th Cir. 1984)).

The ALJ did not find Plaintiff's mental impairment(s) to be severe. Nevertheless, the ALJ explicitly recognized the requirement that he "consider all of the claimant's impairments, including impairments that are not severe[.]" Tr. at 32 (citing 20 C.F.R. §§ 404.1520(e), 404.1545; SSR 96-8P). Accordingly, the ALJ proceeded to evaluate Plaintiff's alleged mental impairment(s). In doing so, the ALJ specifically discussed in detail certain documented medical evidence of Plaintiff's mental impairment(s).

First, the ALJ discussed a December 17, 2002 psychological evaluation by state consultative examiner Peter Knox, M.Ed., Ph.D. ("Dr. Knox"). Tr. at 33 (referring to Tr. at 777-82). Among other things, the ALJ observed that Plaintiff reported to Dr. Knox having difficulty with her short-term memory, becoming confused and forgetful, and having difficulty sleeping. Tr. at 33-34 (referring to Tr. at 777, 778, 779-80). The ALJ recognized that during the evaluation, Plaintiff's "mood was dysphoric with a blunted affect" but that her "quality of thinking, concentration and memory were intact and she was fully oriented." Tr. at 34 (referring to Tr. at 780). Also, the ALJ commented on Dr. Knox's impression that Plaintiff suffered from long-term depression in the "few years" prior to the evaluation. Tr. at 34 (referring to Tr. at 781). The ALJ stated that Dr. Knox diagnosed Plaintiff with dysthymia, suspected personality disorder, and "living/occupation issue[s]." Tr. at 34 (referring to Tr. at 781). The ALJ noted Plaintiff was assigned a global assessment of functioning ("GAF") score of sixty by Dr. Knox. Tr. at 34 (referring to Tr. at 781). With respect to Plaintiff's work-related mental activities, the ALJ relied on Dr. Knox's finding of "No significant impairment in this

area"; with respect to concentration and persistence, the ALJ relied on Dr. Knox's finding of "'[N]o significant issues in this area.'" Tr. at 34 (quoting Tr. at 782). Accordingly, the ALJ concluded that Dr. Knox's assessment showed "no mental limitations that would prevent [Plaintiff] from working." Tr. at 34.

Second, the ALJ discussed in detail on a psychological evaluation conducted on February 5, 2003 by Margaret Himmelheber, A.R.N.P. ("Ms. Himmelheber") at a Veteran's Medical Center.[7] Tr. at 34 (referring to Tr. at 850-54). Among other things, the ALJ commented on Plaintiff being "tense" during the evaluation, having normal eye contact, being cooperative but restless and evasive, and having a sad and anxious mood with some irritation. Tr. at 34 (referring to Tr. at 850-54). The ALJ also pointed out Plaintiff's normal affect range, her circumstantial, rambling, and tangential thought process, her normal, reality-based perceptions, her full orientation, and her abstract thinking being intact. Tr. at 34 (referring to Tr. at 850-54). The ALJ noted Plaintiff's diagnosis at that time was mood disorder with anxiety and depression, with probable somatization. Tr. at 34 (referring to Tr. at 854). Finally, the ALJ recognized the assignment of fifty-five for a GAF score. Tr. at 34 (referring to Tr. at 854).[8]

Plaintiff was treated on a somewhat regular basis from February 2003 through July 2003 for mental health issues at the Veteran's Medical Center. The ALJ did not specifically discuss Plaintiff's other visits to the Veteran's Medical Center regarding mental health

---

[7]     As Defendant points out, the ALJ mistakenly indicates Dr. Edward Andrew Sobolewski conducted Plaintiff's mental assessments through the Veteran's Health System. See Memorandum in Support of the Commissioner's Decision (Doc. No. 16; "Deft.'s Mem.") at 7 n.4 (citing Tr. at 23, 850). In fact, Dr. Sobolewski co-signed the notes authored by Ms. Himmelheber. Tr. at 850-54.

[8]     Plaintiff was also seen by Ms. Himmelheber on April 26, 1999 (before her alleged onset date) for a similar evaluation. At that time, the diagnosis was "R/O depression in vet with O/C traits" and Plaintiff was started on Fluvoxamine. Tr. at 549, 552-53. The GAF score assigned was sixty-five. Tr. at 553. It does not appear Plaintiff followed up with respect to her possible depression after the April 26, 1999 exam.

issues.[9]  However, treatment notes from those visits are generally consistent with the observations discussed in detail by the ALJ.  See Tr. at 846 (diagnosing dysthymia and "OC personality traits," and noting reported memory problems); Tr. at 846 (diagnosing mood disorder with anxiety and depression and probable somatization, assigning a GAF score of fifty-five, increasing medications, and noting reported trouble sleeping); Tr. at 844-45 (diagnosing "GAD" and dysthemia with "OC personality," and noting improved sleeping); Tr. at 841 (diagnosing "GAD with OCD," and noting "excited mood, pleasant affect, ration[al] but limited insight"); Tr. at 840 (diagnosing "probable dysthemia with history of poor treatment response GAF equals 55," and noting "somewhat depressed, constricted affect, pleasant, fragile, somewhat histrionic"); Tr. at 838 (diagnosing dysthemia and noting "euthymic mood, smiling affect, rational, preoccupied with her physical problems..."); Tr. at 825 (diagnosing dysthymia and somatization, and noting "feels better on effexor, no complaints, still living with mother but trying to clean apartment. . ."). Also, on May 19, 2004, Plaintiff was seen at the Veteren's Medical Center for mental health counseling which was not specifically discussed by the ALJ.  Tr. at 791-96.  Again, the notes from this session appear consistent with the evidence discussed by the ALJ.  See Tr. at 791-96 (diagnosing dysthymia and somatization disorder, assigning GAF score of sixty, restarting Plaintiff on the medication paxil).

Plaintiff points to her GAF scores of sixty and fifty-five and argues those scores indicate "'moderate'" symptoms that should have been addressed by the ALJ in formulating the hypothetical to the vocational expert.  Pl.'s Mem. at 8-9.  "The [GAF] Scale describes an individual's overall psychological, social, and occupational functioning as a result of mental illness, without including any impaired functioning due to physical or environmental

---

[9]      Plaintiff also often visited the Veteran's Medical Center for a myriad of medical issues which were summarized by the ALJ but are irrelevant to the issue raised on appeal.

limitations." Mathis v. Astrue, No. 3:06-cv-816-J-MCR, 2008 WL 876955, at *7, n. 4 (M.D. Fla. Mar. 27, 2008) (unpublished) (citing Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") (4th ed. 1994) at 32). The GAF score is necessarily "a subjective determination that represents the clinician's judgment of the individual's overall level of functioning." Deboard v. Comm'r of Soc. Sec., No. 05-6854, 211 F. App'x 411, 415-16 (6th Cir. 2006) (unpublished) (internal quotation omitted). A GAF score in the range of fifty-one to sixty indicates "moderate" symptoms or difficulties. DSM-IV at 34.

Although GAF scores frequently have been cited in Social Security disability benefits determinations, "the Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs,' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" Wind v. Barnhart, 133 Fed. App'x 684, 692 n.5 (11th Cir. 2005) (unpublished) (quoting Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 FR 50746-01, 2001 WL 1173632 (Aug. 21, 2000)); see also Parsons v. Astrue, No. 5:06cv217/RS-EMT, 2008 WL 539060, at *7 (N.D. Fla. Feb. 22, 2008) (unpublished) (noting same).

As a result of the Commissioner's refusal to endorse the GAF scale, and due to the subjectivity of the clinician's determination involved in assigning the GAF score, courts appropriately assign GAF scores limited weight in reviewing an ALJ's decision regarding a plaintiff's functional capacity. Indeed, as noted by a court in this district, "[r]eliance upon a GAF score is of questionable value in determining an individual's mental functional capacity." Gasaway v. Astrue, No. 8:06-cv-1869-T-TGW, 2008 WL 585113, at *4 (M.D. Fla. Mar. 3, 2008) (unpublished) (citing Deboard, 211 F. App'x at 415-16).

Here, the ALJ specifically referred to GAF scores of fifty-five and sixty when commenting on the medical evidence. See supra at 6-7. Thus, although the scores are of limited value in this Court's determination of whether the ALJ properly formulated the hypothetical to the vocational expert and assessed the RFC, it is evident the scores were at least taken into account when the ALJ formulated the hypothetical and assessed the RFC.

Additionally, in determining the limitations that Plaintiff faces as a result of her mental impairment(s), the ALJ relied on the Psychiatric Review Technique Form filled out on January 9, 2002 by Alejandro F. Vergara, M.D. ("Dr. Vergara"). Tr. at 34-35 (referring to Tr. at 310-23).[10] Dr. Vergara examined Plaintiff on December 17, 2002. Tr. at 322. When filling out the form, Dr. Vergara opined Plaintiff had mental impairment(s) that were not severe. Tr. at 310. Dr. Vergara diagnosed "dysthymia, mild" and noted, "Disability, if any would be physical in natur[e.]" Tr. at 313. Dr. Vergara stated Plaintiff had no limitations with respect to the categories of: 1) restriction of activities of daily living; 2) difficulties in maintaining concentration, persistence, or pace; and 3) episodes of decompensation, each of extended duration. Tr. at 320. However, Dr. Vergara thought Plaintiff had mild limitation in the category of maintaining social functioning. Tr. at 320. Finally, Dr. Vergara opined that the evidence of record did not satisfy the "C" criteria of the mental listings. Tr. at 321.

Partially veering from Dr. Vergara's opinions on the the Psychiatric Review Technique Form, the ALJ found Plaintiff "has mild difficulties of activities of daily living, and mild difficulties in maintaining social functioning. . . [as well as] mild difficulties in maintaining

_____

[10] The ALJ did not explicitly name Dr. Vergara when referring to the Psychiatric Review Technique Form. However, the undersigned assumes the ALJ was relying on Dr. Vergara's form based on the ALJ's reference to "[u]tilizing the Psychiatric Review Technique Form" (Tr. at 34), because it is the only form of this type that exists in the record.

concentration, persistence, or pace." Tr. at 34-35. Thus, the ALJ found Plaintiff had more limitations resulting from her mental impairment(s) than Dr. Vergara opined.

Further, in forming the hypothetical to the vocational expert, it appears the ALJ gave Plaintiff the benefit of any doubt with respect to the limitations resulting from her mental impairment. Regarding the limitations possibly resulting from (a) mental impairment(s) that the record supports, namely memory loss and lack of ability to concentrate,[11] the ALJ instructed Mr. Heartsill, the vocational expert:

> ...now assume further as the result of an ailment, and Mr. Heartsill, for the record I'm not sure whether this particular ailment is caused by a mental impairment or by medications or maybe the residual of some prior medical treatment like anesthesiology but assume I find a mild to moderate limit on the capacity to understand, remember, and carry out detailed instructions, and to maintain concentration and attention for an extended period, and assume as the result of those limitations on mental functioning that I find the hypothetical claimant limited to non-production work.

Tr. at 1162-63 (emphasis added). Mr. Heartsill responded that the jobs of ticket taker, ticket seller, and call-out operator would fit the hypothetical. Tr. at 1164. Although the ALJ found Plaintiff suffered from mild limitations in three of the four areas addressed by the Psychiatric Review Technique form, he found she had "a mild to moderate limit" with respect to other, more specific areas. Further, the ALJ incorporated the above findings into Plaintiff's RFC. Tr. at 35 (finding Plaintiff "has mild to moderate limitation on her capacity to understand, remember and carry out detailed instructions and to maintain concentration and attention for extended periods, which functionally limits her to simple, nonproduction work"). Thus, the ALJ sufficiently took into account evidence of Plaintiff's mental impairment(s) and the

---

[11] Plaintiff often complained to her mental health counselors of her inability to concentrate on the task of cleaning her home. Tr. at 850-54, 846, 844, 841, 840, 838, 825. Similarly, Plaintiff testified at the second hearing regarding concentration and confusion issues. Tr. at 1143, 1150, 1153. Additionally, Plaintiff's mother and sister-in-law filled out forms for Plaintiff's disability adjudicator which noted concerns regarding Plaintiff's ability to concentrate. Tr. at 156-59, 160-65.

resulting limitations when formulating the hypothetical to the vocational expert and assessing Plaintiff's RFC.

## V. Conclusion

The ALJ properly formulated the hypothetical to the vocational expert and properly assessed Paintiff's RFC.  In addition, review of the entire record indicates substantial evidence supports the Commissioner's final decision with respect to Plaintiff's disability status.  In accordance with the foregoing, it is

**ORDERED:**

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's decision.

2. The Clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on September 28, 2009.

JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record